# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| 1016 WEST HOLLYWOOD, LLC,[1] | Case No. 14-02696 |
| Debtor. | Hon. Jacqueline P. Cox |

## NOTICE OF MOTION

TO: See attached Service List

        **PLEASE TAKE NOTICE** that on **Tuesday, November 7, 2016 at 9:30 a.m. Central Time**, or as soon thereafter as counsel may be heard, the undersigned will appear before United States Bankruptcy Judge Jacqueline P. Cox, or any other judge sitting in her stead, in Courtroom 680 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the attached *Second Interim and Final Application of Locke Lord LLP, Counsel to 1016 West Hollywood, LLC, as Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from January 29, 2014, to and Including January 28, 2016*, a copy of which is hereby served upon you, at which time and place you may appear as you see fit.

Dated: October 16, 2017

                                        **LOCKE LORD LLP**

                                        By:  */s/Phillip W. Nelson*
                                             An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to 1016 West Hollywood, LLC*

---

[1]     Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Hollywood Debtor's federal tax identification number are: 1721.  The location of the Hollywood Debtor's place of business is 1016 West Hollywood Avenue, Chicago, Illinois 60660.

## Service List

**Via First Class U.S. Mail**

1st Equity Bank Northwest
Attn: Daniel Lynch
Amy J. Hansen
Lynch & Stern LLP
150 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606

Adam Hecht
158 Circle Ridge Drive
Burr Ridge, IL 60527

Alexander Kogan Revocable Trust
B. Freud - Ruff, Weidenarr & Reidy
222 North LaSalle Street, 700
Chicago, IL 60601

City of Chicago Water Management
c/o Susana Mendoza, City Clerk
121 N. LaSalle Street
Chicago, IL 60602

Everest Elevator, Inc.
c/o Joseph Hancock, President
9054 Terminal Ave.
Skokie, Illinois 60077

Exposition Carpet, Inc.
c/o Marshall Isaacson, President
5718 North Broadway
Chicago, IL 60660

Fine Homes, LLC
Attn: Alex Loyfman, Registered Agent
4117 W. Oakton
Skokie, IL 60076

International Bank of Chicago
Attn: Michael Lee Tinaglia and
      J. Molly Wretzky
Law Offices of Michael Lee Tinaglia, Ltd.
444 N. Northwest Hwy., Suite 350
Park Ridge, Illinois 60068

Fine Homes, LLC
Attn: Richard E. Steck
Jody Rosenbaum
Richard E. Steck & Associates
140 S. Dearborn Street, Suite 1610
Chicago, Illinois 60603

Lena Kogan Revocable Trust
c/o B. Freud - Ruff, Weidenaar & Reidy
222 North LaSalle Street, Suite 700
Chicago, IL 60601

Tricia Putzy
311 W. Superior Street, Suite 500
Chicago, IL 60654

Waste Management, Inc.
Attn: Commercial Billing
700 E. Butterfield Road, 4th Fl.
Lombard, IL 60148

Waste Management, Inc.
c/o CT Corporation System
Waste Management of Illinois, Inc.
208 S. LaSalle St., Suite 814
Chicago, Illinois 60604

Commonwealth Edison Co.
c/o Legal Revenue Recovery / Claims Dept.
Three Lincoln Center
Oakbrook Terrance, Illinois 60181

Peoples Gas Light and Coke Company
Attn: Bankruptcy Dept.
130 E. Randolph Dr.
Chicago, Illinois 60601

Office of the United States of the Trustee
Attn: Kathryn M. Gleason
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604

Illinois Department of Revenue, Bankruptcy
100 W. Washington Street, 7-400
Chicago, IL 60601

AM 57562888.1

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

United States Attorney
219 South Dearborn Street
Chicago, IL 60604

Territory Manager, Insolvency Territory 7
Internal Revenue Service
230 S. Dearborn Street
Mail Stop 5000 CHI, Room 3022
Chicago, IL 60604

**Via Electronic Case Filing System Service**

- Patrick S Layng
  USTPRegion11.ES.ECF@usdoj.gov

- Daniel F Lynch on behalf of Creditor 1st Equity Bank Northwest
  dan@lynchandstern.com; and lynchandsterndocketing@gmail.com

- Michael Lee Tinaglia on behalf of Creditor International Bank of Chicago
  mltinaglia@tinaglialaw.com; and jmwretzky@tinaglialaw.com

- Jody B Rosenbaum on behalf of Creditor Fine Homes, LLC
  jodyrosenbaum@yahoo.com

**<u>Certificate of Service</u>**

I, Phillip W. Nelson, an attorney, certify that, as of the date hereof, I caused a copy of (a) the foregoing *Notice of Motion* and (b) the related *Second Interim and Final Application of Locke Lord LLP, Counsel to 1016 West Hollywood, LLC, as Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from January 29, 2014, to and Including January 28, 2016,* to be served on the foregoing Service List via first class U.S. mail and via the Court's ECF System on those parties entitled to electronic service.

Date: October 16, 2017                    */s/Phillip W. Nelson*
                                                        Phillip W. Nelson
                                                        LOCKE LORD LLP
                                                        111 South Wacker Drive
                                                        Chicago, Illinois 60606
                                                        Telephone: 312-443-0700
                                                        Facsimile: 312-443-0336
                                                        phillip.nelson@lockelord.com

AM 57562888.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| 1016 WEST HOLLYWOOD, LLC,[1] | Case No. 14-02696 |
| Debtor. | Hon. Jacqueline P. Cox |

**COVER SHEET FOR SECOND INTERIM AND FINAL APPLICATION OF LOCKE**
**LORD LLP, COUNSEL TO 1016 WEST HOLLYWOOD, LLC,**
**AS DEBTOR AND DEBTOR IN POSSESSION, FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD FROM JANUARY 29, 2014, TO AND INCLUDING JANUARY 28, 2016**

| | |
|---|---|
| Name of Applicant: | Locke Lord LLP |
| Authorized to provide professional services to: | 1016 West Hollywood, LLC, Debtor and Debtor in Possession |
| Date of retention: | Order entered on April 15, 2014, *nunc pro tunc* to January 29, 2014 |
| Period for which compensation and reimbursement is sought: | January 29, 2014 to and including January 28, 2016 |
| Amount of compensation sought as actual, reasonable, and necessary: | $292,343.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $2,522.26 |
| Total compensation and expense reimbursement requested: | $294,865.26 |

This is a __ monthly __ interim _X_ final application.

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Hollywood Debtor's federal tax identification number are: 1721.  The location of the Hollywood Debtor's place of business is 1016 West Hollywood Avenue, Chicago, Illinois 60660.

**Summary of Hours Billed by Attorneys and
Paraprofessionals During the Fee Period**

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $675.00 | 22.40 | $15,120.00 |
| Steven L. Paul | Partner | 1973 | Tax | $775.00 | 0.20 | $155.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $465.00 | 557.60 | $259,284.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 19.10 | $5,730.00 |
| | | | | $350.00 | 28.50 | $9,975.00 |
| | | | | $385.00 | 5.40 | $2,079.00 |
| **Total** | | | | | **633.20** | **$292,343.00** |

**Summary of the Total Amount of Fees and Expenses Incurred
Under Each Subject Matter During the Fee Period**

| Matter Number | Matter Description | Hours | Fees | Expenses | Total |
|---|---|---|---|---|---|
| 2 | Chapter 11 Bankruptcy Filing | 0.30 | $139.50 | $0.00 | $139.50 |
| 3 | Adversary Proceedings | 0.60 | $279.00 | $0.00 | $279.00 |
| 5 | Automatic Stay | 3.20 | $1,488.00 | $0.00 | $1,488.00 |
| 6 | Avoidance Action Issues | 5.10 | $2,371.50 | $355.00 | $2,726.50 |
| 7 | Business Operations | 5.70 | $2,650.50 | $0.00 | $2,650.50 |
| 8 | Case Administration | 16.20 | $6,955.50 | $7.00 | $6,962.50 |
| 9 | Cash and Financing Issues | 110.00 | $49,114.00 | $328.26 | $49,442.26 |
| 10 | Claim Issues | 18.10 | $8,309.50 | $0.00 | $8,309.50 |
| 17 | Secured Lender Issues | 108.20 | $53,883.00 | $94.45 | $53,977.45 |
| 18 | Plan, Disclosure Statement, and Exit Planning | 247.90 | $114,366.50 | $1,622.80 | $115,989.30 |
| 19 | Hearings | 19.70 | $9,370.50 | $15.00 | $9,385.50 |
| 20 | Locke Lord Retention Issues | 42.60 | $18,367.50 | $99.75 | $18,467.25 |
| 22 | Schedules of Assets and Liabilities and Statements of Financial Affairs | 51.60 | $23,298.50 | $0.00 | $23,298.50 |
| 24 | Utility Issues | 1.60 | $744.00 | $0.00 | $744.00 |
| 25 | Tax Issues | 2.40 | $1,005.50 | $0.00 | $1,005.50 |
| **Totals** | | **633.20** | **$292,343.00** | **$2,522.26** | **$294,865.26** |

AM 57562888.1

Dated: October 16, 2017

**LOCKE LORD LLP**

By:  */s/Phillip W. Nelson*
‎       An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to 1016 West Hollywood, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| 1016 WEST HOLLYWOOD, LLC,[1] | Case No. 14-02696 |
| Debtor. | Hon. Jacqueline P. Cox |

**COVER SHEET FOR SECOND INTERIM AND FINAL APPLICATION OF LOCKE
LORD LLP, COUNSEL TO 1016 WEST HOLLYWOOD, LLC,
AS DEBTOR AND DEBTOR IN POSSESSION, FOR ALLOWANCE
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD FROM JANUARY 29, 2014, TO AND INCLUDING JANUARY 28, 2016**

Locke Lord LLP ("***Locke Lord***"), counsel to 1016 West Hollywood, LLC, the above-captioned debtor and debtor in possession, (the "***Hollywood Debtor***") submits this second interim and final; fee application (this "***Final Application***") and states as follows:

### Relief Requested

1.     By this Application, Locke Lord respectfully requests that this Court enter an order substantially in the form attached hereto (the "***Proposed Order***") awarding Locke Lord compensation for professional services rendered to the Hollywood Debtor and for reimbursement of actual and necessary expenses incurred in connection with such services from January 29, 2014, to and including January 28, 2016 (the "***Fee Period***") pursuant to sections 327, 330, and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), Rule 5082-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Northern District of Illinois (the "***Local Rules***").

---

[1]     Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Hollywood Debtor's federal tax identification number are: 1721.  The location of the Hollywood Debtor's place of business is 1016 West Hollywood Avenue, Chicago, Illinois 60660.

2.      In this Final Application, Locke Lord requests (a) allowance and approval of compensation for professional services rendered to the Hollywood Debtor in the aggregate amount of $292,343.00 and (b) reimbursement of actual and necessary expenses in the amount of $2,522.26 incurred by Locke Lord in rendering such services during the Fee Period, on a final basis.

3.      Locke Lord has previously filed one interim application for professional compensation with this Court, the First Interim Fee Application, and the Court approved that application and authorized the Hollywood Debtor to pay Locke Lord $95,246.00 for professional fees and $750.94 for the reimbursement of expenses incurred by Locke Lord during the period from January 29, 2014 through October 31, 2014 pursuant to the First Fee Order (as defined below).   Locke Lord now seeks the final approval of the compensation and expense reimbursement previously approved on an interim basis pursuant to the First Fee Order as part of this Final Application.  In support of this Final Fee Application, Locke Lord respectfully states as follows.

## Jurisdiction and Venue

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

6.      The bases for the relief requested herein are sections 327, 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 5082-1.

## Background

7.      On January 29, 2014 (the "***Petition Date***"), the Hollywood Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Hollywood Debtor is a single-asset real estate limited liability company that owns, maintains, and operates

the property commonly known as 1016 West Hollywood Avenue, Chicago, Illinois (the "**Hollywood Property**") as a residential rental property. The Hollywood Property is a 72 unit apartment building in the Edgewater neighborhood of Chicago, containing 26 studio units, 37 one-bedroom units, and 9 two-bedroom units.

8.    During the chapter 11 case, the Hollywood Debtor operated its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner was made in this chapter 11 case, and no official committees were appointed or designated.

9.    On January 22, 2016, the Court entered an order [Docket No. 228] confirming the *First Amended Joint Plan of Reorganization of 1016 West Hollywood LLC and The 800 Building LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 217] (as amended, supplemented, or modified from time to time, the "***Joint Plan***"), which was filed in connection with the 800 Building Debtor (as defined below). On January 28, 2016, the Joint Plan became effective and was consummated and both Debtors emerged from chapter 11 protection.

## Narrative Summary of the Chapter 11 Case

10.    As noted above, the Hollywood Debtor's chapter 11 case is related to that of another chapter 11 case before this court, *In re The 800 Building LLC*, Case No. 15-17314 (the "***800 Building Debtor***"). A separate fee application is being filed concurrently for the services rendered to the 800 Building Debtor in its separate chapter 11 case.

11.    The Hollywood Debtor was a "single-asset real estate" debtor, as that term is defined in section 101(51B) of the Bankruptcy Code. As noted above, the Hollywood Property is a 72-unit apartment building in the Edgewater neighborhood of Chicago. The apartment units consist of 26 studio apartments, 37 one-bedroom apartments, and 9 two-bedroom apartments. The Hollywood Property also rents approximately 40 parking spaces on a monthly basis.

12.     As of the date it filed for bankruptcy protection on May 15, 2015, the 800
Building Debtor owned two real properties: (a) a 246-unit residential high-rise in downtown at
800 South 4th Street, Louisville, Kentucky known as "The 800 Building"; and a 48-slot parking
garage located next-door to The 800 Building with a street address of 820 South 4th Street (the
"**Garage**").  The 800 Building was sold on June 16, 2015, pursuant to orders entered by the
Court, after both an extensive pre-petition and expedited post-petition marketing process, for
$20.65 million, yielding net proceeds to the 800 Building Debtor of approximately $4.3 million
after paying secured debt and seller closing costs.  The 800 Building Debtor continues to own
and manage the Garage following its emergence from chapter 11 protection.  The Debtors were
both formed by Leon Petcov to own their respective properties.

13.     As the Court is aware, the 800 Building Debtor and its affiliate 1016 West
Hollywood, LLC (the "**Hollywood Debtor**" and, together with the 800 Building Debtor, the
"**Debtors**," now the "**Reorganized Debtors**"), both of which are owned by Leon and Helen
Petcov (the "**Petcovs**" and, together with the Reorganized Debtors, the "**Petcov Parties**")
confirmed a joint plan of reorganization  on January 21, 2016.  The purpose of the Plan was to
allow the Petcovs and the Reorganized Debtors to deal with various disputes with three key
creditor constituencies: (1) International Bank of Chicago ("**IBC**"); (2) 1st Equity Bank
Northwest ("**1st Equity**"); and (3) Fine Homes LLC ("**Fine Homes**"), Fine Homes' owners
Michael and Faina Loyfman (the "**Loyfmans**"), and the Loyfmans' son, Alex Loyfman (together
with Fine Homes and the Loyfmans, the "**Loyfman Parties**").  The Petcovs, the Loyfman Parties,
and 1st Equity were involved in a three-way dispute regarding the single-family residence
commonly known as 70 Harbor Street, Glencoe, Illinois ("**70 Harbor**"), that centered around 1st
Equity's loans to the Loyfman Parties, which were secured by 70 Harbor, and the Petcov's

obligations under the Article of Agreement for Warranty Deed (the "***Contract for Deed***") with Fine Homes, pursuant to which the Petcovs agreed to purchase 70 Harbor. Those disputes had eventually involved the Debtors and IBC (due to IBC's secured loans to the Debtors and a number of their affiliates owned by the Petcovs). The Debtors filed their chapter 11 cases to provide a means to restructure these obligations and resolve the Petcov Parties' disputes with 1st Equity, IBC, and the Lofyman Parties in comprehensive way.

14. The twin pillars of the Plan were: (a) the restructuring and pay-off over time of the Debtors' IBC obligations; and (b) the purchase by the 800 Building Debtor of 1st Equity's mortgage on, and the notes secured by, 70 Harbor for a total of $4.9 million—consisting of a $3.5 million initial cash payment and a $1.4 million promissory note to be paid off no later than July 31, 2017 (the "***1st Equity Note Purchase Promissory Note***"). Purchase of the 70 Harbor mortgage and debt from 1st Equity was intended to resolve the Petcov Parties disputes with 1st Equity and allow the Reorganized 800 Building Debtor to complete 1st Equity's foreclosure on 70 Harbor and use the resulting judgments to end the Petcov Parties' disputes with the Loyfman Parties under the Contract for Deed. The terms of the Plan provided that the purchase of the 1st Equity notes and mortgage would require additional documentation beyond the plan, including the promissory note, allonges, assignment documents, and other ancillary documents to address aspects of the parties' agreement in full (the "***Assignment Documents***").

15. As the Court is also aware, following the confirmation of the Plan, the Reorganized Debtors pursued and completed the foreclosure of 70 Harbor but also ended up engaging in further litigation with 1st Equity before this Court with respect to disputes involving the Assignment Documents. Fortunately, the Reorganized Debtors, the Petcovs, the Loyfman

Parties, and 1st Equity were able to reach agreements regarding certain transactions that allowed them to settle their disputes. Those transactions closed on or about March 31, 2017.

16.     As set forth in greater detail in the *Disclosure Statement for the Joint Plan of Reorganization of 1016 West Hollywood, LLC and The 800 Building, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 169] (the "***Disclosure Statement***"), the Debtors' chapter 11 filings were necessitated by a series of interrelated transactions and obligations involving the Petcov Parties, IBC, 1st Equity, and the Loyfman Parties. A brief review of these facts is helpful to understanding the arc of the Debtors' chapter 11 cases.

17.     On May 5, 2008, the Petcovs entered into the Contract for Deed, pursuant to which the Petcovs agreed to purchase 70 Harbor from Fine Homes.

18.     At the time that the Petcovs entered into the Contract for Deed, 70 Harbor secured loans to Fine Homes by 1st Equity in the principal amount of approximately $4.5 million (the "***70 Harbor Notes***") pursuant to a mortgage in favor of 1st Equity (the "***70 Harbor Mortgage***"). In late 2009, the Petcovs agreed to guarantee the 70 Harbor Notes and also caused the Hollywood Debtor to grant Fine Homes a third-priority mortgage on the Hollywood Property to guaranty the Petcovs' obligations under the Contract for Deed. The Petcovs also caused the Hollywood Debtor to grant 1st Equity a fourth-priority mortgage on the Hollywood Property to secure the Petcovs' guaranty of the 70 Harbor Notes.

19.     As the 2008-2009 Financial Crisis began to gain momentum, the Petcovs' rental properties, including Debtors' properties, encountered financial difficulty as occupancy rates and current rent payments slipped.

20.     In August 2012, the Hollywood Debtor missed a monthly payment in August 2012 on its $3.6 million first-lien mortgage and was unable to pay the second installment of its

2011 real property taxes.  Among other things, this caused a default under the Hollywood Debtor's first-lien term loan, then held by an entity called VCP 1016 Hollywood LLC, which started an action to foreclose on the Hollywood Debtor's rental property in the Circuit Court of Cook County, Illinois, Chancery Division (the "*Chancery Division*"), captioned VCP 1016 Hollywood LLC v. 1016 W. Hollywood LLC et al., Case No 12 CH 34901 (the "*Hollywood Foreclosure*").

21.     At the time VCP 1016 Hollywood LLC commenced the Hollywood Foreclosure, IBC held a $1.3 million second-lien position on the Hollywood Property.  However, IBC also held an approximately $450,000 loan secured by a second mortgage on The 800 Building.  IBC also held loans with several of the Debtors' affiliates, all of which were owned by the Petcovs, totaling approximately $24.2 million — all of which debt was cross-collateralized, also guaranteed by Leon Petcov (collectively, the "*IBC Loans*").  Accordingly, to protect its second-lien position in the Hollywood Property and its cross-collateralized interests in the 800 Building Debtor and the Debtors' affiliates, IBC acquired the VCP 1016 Hollywood LLC first-lien loan.

22.     With their real estate interests struggling, the Petcovs were unable to make the required payments on the Contract for Deed and a related promissory note with Fine Homes executed by Leon Petcov to finance part of the obligations under the Contract for Deed.  Fine Homes, in turn, was unable to pay the 1st Equity Note, which went into default.

23.     On or about April 26, 2013, Fine Homes filed a complaint against the Petcovs seeking to enforce the Contract for Deed in a proceeding before the Law Division of the Circuit Court of Cook County, Illinois (the "*Law Division*"), captioned Fine Homes LLC v. Leon Petcov and Helen Petcov, Case No. 2013 L 004334 (the "*Contract Action*").

24.      Fine Homes also sought a receiver in the Hollywood Foreclosure.  With the receiver motion set to be heard on January 29, 2014, the Hollywood Debtor was compelled to seek chapter 11 relief to take advantage of the breathing room provided by the automatic stay to retain possession of its property and reorganize its obligations using the resources of the Bankruptcy Code.

25.      Additionally, on or about March 13, 2014, 1st Equity commenced a proceeding to foreclose the 70 Harbor Mortgage and enforce the 70 Harbor Notes in the Chancery Division, captioned 1st Equity Bank Northwest v. Fine Homes LLC, et al., Case No. 2014 CH 04372 (the "*Foreclosure Action*").   On August 1, 2014, 1st Equity also filed a complaint in the Law Division against the Petcovs seeking to enforce their guarantee of the 70 Harbor Notes, captioned 1st Equity Bank Northwest v. Leon Petcov and Helen Petcov, 2014 L 008068 (the "*Guarantee Litigation*").

26.      While the Hollywood Debtor's chapter 11 case progressed, the Hollywood Debtor and the Petcovs sought to reach a negotiated solution with IBC, Fine Homes, and 1st Equity, while 1st Equity pushed forward on the Guarantee Litigation against the Petcovs.  At the same time, the Hollywood Debtor and the Petcovs continued to have negotiations, particularly with IBC and 1st Equity about a means to restructure the Hollywood Debtor's and the Petcovs' obligations.

27.      While the Hollywood Debtor and the Petcovs were negotiating with 1st Equity, IBC, and the Loyfman Parties, the 800 Building Debtor was preparing to sell The 800 Building for approximately $20.65 million—enough to (a) pay off the $15.5 million first-lien mortgage on The 800 Building in favor of Republic Bank of Chicago ("*Republic Bank*"), (b) pay off IBC's $450,000 second-line mortgage on The 800 Building, mentioned above, and (c) leave $4.3

million in proceeds (which was still IBC's collateral) which could be used (with IBC's agreement) to fund the Hollywood Debtor's plan and make a settlement with IBC, 1st Equity, and the Loyfmans.  Through negotiations with IBC led by Locke Lord, the Hollywood Debtor, the Petcovs, and IBC had reached an agreement in principal on the terms of restructuring the IBC Loans (the "***IBC Restructuring Support Agreement***") that would allow The 800 Building sale proceeds to be used for these purposes.

28.     When 1st Equity learned of these negotiations, it filed an "emergency" motion in the Guarantee Litigation, claiming that the Petcovs were preparing to leave the country with The 800 Building sale proceeds, and convincing the Guarantee Litigation court to reverse itself on a prior denial of summary judgment in favor of 1st Equity.  Accordingly, on February 15, 2015, the Law Division issued a judgment in the Guarantee Litigation in favor of 1st Equity and against the Petcovs personally in the amount of $6.345 million (the "***Guarantee Judgment***"), which 1st Equity also claimed was secured by its fourth-lien mortgage against the Hollywood Property.

29.     The Loyfmans also learned of the upcoming sale of The 800 Building and caused Fine Homes to file a *lis pendens* against The 800 Building.  The *lis pendens* had no meritorious legal basis, and neither the Loyfmans nor Fine Homes had a valid claim against the 800 Building Debtor, let alone a lien on its property.  Nevertheless, the title company refused to insure over the *lis pendens* and removal of the *lis pendens* through available state-court processes would have imperiled the sale, as the purchaser's financing commitment would have expired.  Additionally, pursuant to the terms of a forbearance with Republic Bank, the 800 Building Debtor would have been obligated to pay Republic Bank an additional $500,000 if it could not complete the sale to pay off the Republic Bank loans by June 15, 2015.  As a result, the 800 Building Debtor was

forced to seek chapter 11 relief to complete, with the assistance of Locke Lord, the expedited

sale of The 800 Building pursuant to section 363(f) of the Bankruptcy Code, free and clear of the

*lis pendens*.  On June 9, 2015, this Court entered an order approving the sale of The 800

Building.  The sale closed on June 12, 2015.

30.     At the same time that the Debtors and Locke Lord worked to complete the sale of

The 800 Building, they also continued negotiations with IBC and 1st Equity.  With respect to

IBC, those discussions centered around confirming a plan of reorganization that would

implement the IBC Restructuring Support Agreement and allow for the resolution of 1st Equity's

and Fine Homes' claims—which continued to be the main difficulties.

31.     Ultimately, 1st Equity, the Debtors, and the Petcovs began to focus their efforts

around a plan structure pursuant to which (a) the 800 Building Debtor would purchase the 70

Harbor Notes, the 70 Harbor Mortgage and the Guarantee Judgment against the Petcovs, (b) 1st

Equity's fourth-priority mortgage on the Hollywood Property would be released pursuant to the

Plan, and (c) the Reorganized Debtors and the Petcovs would use the 70 Harbor Notes and the 70

Harbor foreclosure action to resolve the Loyfman Parties' Contract for Deed claims, including

Fine Homes' third-priority mortgage on the Hollywood Property.  It was anticipated that, in the

end, 1st Equity would receive its agreed settlement amount of $4.9 million, Loyfman Parties'

claims would be resolved, the Hollywood Debtor and the Petcovs would be released from their

obligations to the Loyfman Parties, and the reorganized 800 Building would own 70 Harbor free

and clear and could dispose of it profitably.

32.     To this end, on June 2, 2015, 1st Equity's counsel forwarded a term sheet (the

"*1st Equity Term Sheet*" or the "*Term Sheet*") to Locke Lord that, among other things called for

1st Equity to be paid total consideration of $4.7 million for the 70 Harbor Notes, the 70 Harbor

Mortgage, and the Guarantee Judgment—consisting of $3.0 million in cash through a confirmed plan, with a $1.7 million note from the Reorganized 800 Building Debtor with an 18-month maturity, referred to above as the 1st Equity Note Purchase Promissory Note, guaranteed by the Petcovs, and providing 1st Equity with certain relief in the event of a default.

33.    Through the second half of 2015, the Debtors, the Petcovs, and IBC continued to finalize the documentation for the IBC Restructuring Support Agreement.  The Debtors and the Petcovs also continued to negotiate with 1st Equity on the terms of a global deal along the lines set forth in the 1st Equity Term Sheet.  While Locke Lord endeavored to push forward negotiations on behalf of the Debtors as quickly as possible, progress on the Term Sheet was slow.  A key sticking point was that, in order for the Petcovs to obtain the financing necessary to repay the $1.7 million note to 1st Equity, and to refinance the IBC Loan pursuant to the IBC Restructuring Support Agreement, the Petcovs would need to guarantee the refinancing obligations of the Reorganized Debtors.  However, no bank would accept the Petcovs' guarantees for these new refinancing loans while the Petcovs were subject to the Guarantee Judgment and the citations issued by 1st Equity—thus, it would be impossible for the Reorganized Debtors to fulfill the terms of any proposed plan based on the IBC Restructuring Support Agreement and the 1st Equity Term Sheet.

34.    On September 8, 2015, Locke Lord sent 1st Equity's counesl a revised version of the Term Sheet that attempted to address this issue by giving 1st Equity first-lien mortgages on two parking lots in Louisville, Kentucky owned by two of the Petcovs' non-debtor LLCs (the "***Kentucky Parking Lots***"). 1st Equity rejected this proposal on the basis that without the Guarantee Judgment, 1st Equity would be required to start at square one if there was a default.

35.     Accordingly, on September 11, 2015, Locke Lord responded on behalf of the Debtors with a revised proposal that again explained the guarantee issue and instead offered to give 1st Equity a quit claim deed to 70 Harbor, to be held in escrow and released to 1st Equity only in the event of a default or maturity of the promissory note.

36.     Negotiations on the Term Sheet effectively stalled until IBC, 1st Equity, the Petcovs, and the Debtors (represented by Locke Lord) conducted an in-person meeting at the offices of IBC's counsel on December 10, 2015.  At that meeting, among other things, the parties' agreed on the following:

- 1st Equity would receive total compensation for the 70 Harbor Notes, the 70 Harbor Mortgage, and the Guarantee Judgment in the amount of $4.9 million, instead of $4.7 million.

- The initial cash payment to 1st Equity under the Debtors' plan would increase from $3.0 million to $3.5 million.

- The 1st Equity Note Purchase Promissory Note now be a $1.4 million note, instead of $1.7 million, but would continue to have an 18-month maturity (based on the Plan Effective Date).

- The Guarantee Judgment would be released on the Plan Effective Date, but if the Reorganized 800 Building failed to repay the 1st Equity Note Purchase Promissory Note by the end of the 18 months, the amount owed on the note would jump to $3.7 million as a means of "reinstating" the Guarantee Judgment.

37.     Between the December 10, 2015 meeting and Monday, January 18, 2016, the parties continued to exchange drafts of the Term Sheet that addressed various issues, including whether 1st Equity would finance a separate $400,000 loan against the Kentucky Parking Lots

and whether (and to what extent) the Reorganized 800 Building would receive a discount for paying the 1st Equity Note Purchase Promissory Note early.   Ultimately the concept of borrowing against Kentucky Parking Lots concept was dropped, and the parties also settled on a $200,000 discount for paying off the 1st Equity Note Purchase Promissory Note within 60 days of the plan effective date.

38.   On January 18, 2016, 1st Equity added a further demand under the Term Sheet: because 1st Equity was being examined and its regulators where presently in its offices, 1st Equity needed the Debtors' plan to go effective—and, most importantly, for 1st Equity to receive the initial $3.5 million cash payment—no later than January 28, 2016, or there could be no deal.

39.   With the confirmation hearing on the Debtors' joint plan scheduled for the following day, January 19, 2016, the Debtors agreed to 1st Equity's newest demand.   At the same time, the Debtors learned that the Loyfman Parties had sold certain claims against the Debtors, to Igor and Joseph Vilk (the "*Vilks*").   Locke Lord effectively negotiated a resolution of these claims into the terms of the Plan so that confirmation of the Plan could go forward without interruption.

40.   At the January 19, 2016 confirmation hearing, the Debtors informed the Court of the deal with 1st Equity and the Vilks and asked the Court, and the Court agreed, to continue the confirmation hearing to January 21, 2016.   On January 20, 2016, the Debtors filed an amended version of the Plan that incorporated the terms of the 1st Equity deal and the Vilks deal, and 1st Equity filed amended ballots to vote in favor of the Plan [Docket No. 219].   On January 21, 2016, the Court conducted the confirmation hearing and ruled that it would confirm the Plan.   On January 21, 2016, the Court entered an order confirming the Plan.   The Plan became effective on January 28, 2016 (the "*Effective Date*").

41.    As noted above, following the occurrence of the Effective Date, the Reorganized Debtors and 1st Equity engaged in certain additional litigation regarding disputes about their rights under the Plan and the supplemental documents implementing the settlements and agreements that formed the basis for the Plan.   Locke Lord continued to represent the Reorganized Debtors in litigating and resolving these disputes.   Locke Lord also represented The 800 Building Debtor in pursuing the Foreclosure Action with respect to 70 Harbor against Fine Homes and successfully completed the foreclosure.   Having obtained 70 Harbor, The 800 Building then sought to resolve its Contract for Deed disputes with the Loyfman Parties. Ultimately, Locke Lord was successful in negotiating a three-way resolution among the Reorganized Debtors, 1st Equity, and the Loyfman Parties that was consummated in a series of transactions that closed on or about March 31, 2017.   Since that time, the Reorganized Debtors have moved forward with their restructured businesses.   Concurrently with the filing of this final fee application, and Locke Lord's final fee application in the Hollywood Debtor's chapter 11 case, the Reorganized Debtors are seeking to obtain an final decree and close both chapter 11 cases.    Accordingly, Locke Lord now seeks an order finally allowing their fees, the last administrative item to be addressed in these consummated and resolved cases.

## The Debtor's Retention of Locke Lord

42.    On April 15, 2014, this Court entered an order [Docket No. 30] (the "***Retention Order***") authorizing the Hollywood Debtor to retain and employ Locke Lord's predecessor firm Edwards Wildman LLP ("***Edwards Wildman***"), *nunc pro tunc* to the Petition Date, as its counsel to assist the Hollywood Debtor with managing its chapter 11 estate, prosecuting this chapter 11 case, and addressing all related matters.   On January 1, 2015, Edwards Wildman merged with Locke Lord LLP.   Since that time, Locke Lord has continued to represent the Hollywood Debtor as its restructuring counsel in this chapter 11 case.   On January 16, 2015, Locke Lord filed the

AM 57562888.1

14

*Supplemental Declaration of David J. Fischer in Support of Debtor's Application to Retain and Employ Locke Lord LLP (as Successor to Edwards Wildman Palmer LLP) as Attorneys for the Debtor, Nunc Pro Tunc to the Petition Date* [Docket No. 87] (the "**Supplemental Fischer Declaration**")—which, among other things, disclosed that a review of Locke Lord's connections to creditors and other parties in interest in this chapter 11 case did not reveal any connections or interests that affected the disinterestedness of the combined firm, and that Locke Lord remained a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

43.     The Retention Order authorizes the Hollywood Debtor to compensate Locke Lord in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee's Guidelines (the "**Guidelines**").

### Disinterestedness of Locke Lord

44.     As set forth in the declaration of David J. Fischer (the "**Fischer Declaration**" and, together with the Supplemental Fischer Declaration, the "**Declarations**") attached as **Exhibit B** to the Hollywood Debtor's *Application to Retain and Employ Edwards Wildman Palmer LLP as Attorneys for the Debtor, Nunc Pro Tunc to the Petition Date* [Docket No. 23] (the "**Retention Application**") and the Declarations, Locke Lord does not hold or represent any interest adverse to the Hollywood Debtor's estate and is a "disinterested person" with respect to the Hollywood Debtor as that term is defined in section 101(14) of the Bankruptcy Code.

45.     As set forth in the Declarations, Locke Lord may have in the past represented, may currently represent, or may in the future represent parties in interest in this chapter 11 case in connection with matters unrelated to the Hollywood Debtor and this chapter 11 case.  Those connections Locke Lord has been able to identify with reasonable efforts have been disclosed in the Declarations.  Furthermore, Locke Lord will update the Declarations, as appropriate, if Locke Lord becomes aware of relevant and material new information.

AM 57562888.1

15

46.     Locke Lord performed services for which it is seeking compensation on behalf of or for the Hollywood Debtor and its estate, and not on behalf of any committee, creditor, or other entity.

47.     Except for the retainer paid to Locke Lord prior to the Petition Date, which was disclosed in the Declarations, Locke Lord has not received any payment or promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the chapter 11 case.

48.     Pursuant to Bankruptcy Rule 2016(b), Locke Lord has not shared, nor has Locke Lord agreed to share: (a) any compensation it has received or may receive with another person, other than with the partners, counsel, associates, and other employees of Locke Lord; or (b) any compensation another person or party has received or may receive.

## Requested Compensation

49.     On December 16, 2014, Edwards Wildman filed the *First Interim Application of Edwards Wildman Palmer LLP, Counsel to 1016 West Hollywood, LLC, as Debtor and Debtor in Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from January 29, 2014, to and Including October 31, 2014* [Docket No. 79] (the "***First Interim Fee Application***").  In its First Interim Fee Application, Edwards Wildman sought allowance and payment of $95,246.00 for services rendered and $750.94 for reimbursement of actual expenses incurred between January 29, 2014 and October 31, 2014 (the "***First Interim Fee Period***").  On January 6, 2015, this Court entered an order allowed Locke Lord $95,246.00 in interim compensation and reimbursement of expenses of $750.94 incurred during the Fee Period [Docket No. 83] (the "***First Fee Order***").

50.     Prior to the Petition Date, the Hollywood Debtor gave Locke Lord (then, Edwards Wildman) a retainer totaling $16,000.00 (the "***Retainer***").  Prior to the commencement of the

Hollywood Debtor's chapter 11 case, Locke Lord applied the Retainer to its outstanding fees and expenses, leaving a balance of $1,118.00. Pursuant to the First Fee Order, Locke Lord applied the remaining $1,118.00 of the Retainer to the professional fees and reimbursement of expenses incurred by Locke Lord during the Fee Period. Subsequently, the Hollywood Debtor made additional payments pursuant to the First Fee Order totaling $94,878.94, which was applied to the payment of professional fees and reimbursement of expenses incurred by Locke Lord during the Fee Period approve pursuant to the First Fee Order.

51.    By this Final Fee Application, Locke Lord requests aggregate compensation for the Fee Period of $292,343.00 for services rendered and $2,522.26 for reimbursement of actual expenses, for a total compensation amount of $294,865.26, on a final basis. Thus, Locke Lord also seeks final approval of the fees incurred that are attributable to the First Interim Fee Period.

52.    The fees sought in this Final Application reflect an aggregate of 633.2 hours expended by Locke Lord professionals and paraprofessionals during the Fee Period rendering necessary and beneficial legal services to the Debtor, resulting in an average hourly rate of $461.69. Locke Lord maintains computerized records of the time expended in the performance of the professional services required by the Hollywood Debtor's estate. These records are maintained in the ordinary course of Locke Lord's practice.

53.    The hourly rates and corresponding rate structure used by Locke Lord in this chapter 11 case are equivalent to the hourly rates and corresponding rate structure that Locke Lord predominately uses for restructuring, workout, bankruptcy, insolvency, and comparable matters, whether in court or otherwise, regardless of whether a fee application is required.

54.    Locke Lord's hourly rates are set at a level designed to compensate Locke Lord fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead

expenses.  Hourly rates vary with the experience and seniority of the individuals attorneys and paraprofessionals.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by Locke Lord's competitor firms in the marketplace.

## Summary of Services Performed

55.     During the Fee Period, Locke Lord provided significant professional services to the Hollywood Debtor in connections with this chapter 11 case.  These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by debtors in similar cases.

56.     The following table consists of a breakdown of the amount of fees incurred due to the services rendered by each Locke Lord attorney or paraprofessional, including each such attorney or paraprofessional's position and year admitted to the practice of law (if applicable), department, hourly rate, total hours expended in providing services to the Hollywood Debtor in the Fee Period, and the value attributable to such services:

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $675.00 | 22.40 | $15,120.00 |
| Steven L. Paul | Partner | 1973 | Tax | $775.00 | 0.20 | $155.00 |
| Phillip W. Nelson | Senior Counsel | 2004 | Restructuring | $465.00 | 557.60 | $259,284.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 19.10 | $5,730.00 |
| | | | | $350.00 | 28.50 | $9,975.00 |
| | | | | $385.00 | 5.40 | $2,079.00 |
| Total | | | | | 633.20 | $292,343.00 |

57.     To provide a meaningful summary of Locke Lord's services rendered on behalf of the Debtor, Locke Lord has established, in accordance with the Guidelines and its internal billing procedures, certain subject matters (each, a "*Matter*") in connection with these chapter 11 cases. The following in a summary, by Matter, of the professional services rendered by Locke Lord

during the Fee Period.  This summary is organized in accordance with Locke Lord's internal

system of Matter numbers, which is as follows:

| Matter Number | Matter Description |
|---|---|
| 2 | Chapter 11 Bankruptcy Filing |
| 3 | Adversary Proceedings |
| 5 | Automatic Stay |
| 6 | Avoidance Action Issues |
| 7 | Business Operations |
| 8 | Case Administration |
| 9 | Cash and Financing Issues |
| 10 | Claim Issues |
| 17 | Secured Lender Issues |
| 18 | Plan, Disclosure Statement, and Exit Planning |
| 19 | Hearings |
| 20 | Locke Lord Retention Issues |
| 22 | Schedules of Assets and Liabilities and Statements of Financial Affairs |
| 24 | Utility Issues |
| 25 | Tax Issues |

58.    Additionally, the computerized time records for the Fee Period, organized by

Matter, have been attached to this Application.  The following table summarizes Locke Lord's

fees and expenses incurred during the Fee Period, broken down by Matter:

| Matter Number | Matter Description | Hours | Fees | Expenses | Total |
|---|---|---|---|---|---|
| 2 | Chapter 11 Bankruptcy Filing | 0.30 | $139.50 | $0.00 | $139.50 |
| 3 | Adversary Proceedings | 0.60 | $279.00 | $0.00 | $279.00 |
| 5 | Automatic Stay | 3.20 | $1,488.00 | $0.00 | $1,488.00 |
| 6 | Avoidance Action Issues | 5.10 | $2,371.50 | $355.00 | $2,726.50 |
| 7 | Business Operations | 5.70 | $2,650.50 | $0.00 | $2,650.50 |
| 8 | Case Administration | 16.20 | $6,955.50 | $7.00 | $6,962.50 |

AM 57562888.1

| 9 | Cash and Financing Issues | 110.00 | $49,114.00 | $328.26 | $49,442.26 |
| 10 | Claim Issues | 18.10 | $8,309.50 | $0.00 | $8,309.50 |
| 17 | Secured Lender Issues | 108.20 | $53,883.00 | $94.45 | $53,977.45 |
| 18 | Plan, Disclosure Statement, and Exit Planning | 247.90 | $114,366.50 | $1,622.80 | $115,989.30 |
| 19 | Hearings | 19.70 | $9,370.50 | $15.00 | $9,385.50 |
| 20 | Locke Lord Retention Issues | 42.60 | $18,367.50 | $99.75 | $18,467.25 |
| 22 | Schedules of Assets and Liabilities and Statements of Financial Affairs | 51.60 | $23,298.50 | $0.00 | $23,298.50 |
| 24 | Utility Issues | 1.60 | $744.00 | $0.00 | $744.00 |
| 25 | Tax Issues | 2.40 | $1,005.50 | $0.00 | $1,005.50 |
| **Totals** | | **633.20** | **$292,343.00** | **$2,522.26** | **$294,865.26** |

59.     The following is a summary, by Matter, of the legal services rendered by Locke Lord during the Fee Period:

A.     **Chapter 11 Bankruptcy Filing (Matter 2)[2]**

(Fees: $139.50; Hours: 0.30)

60.     This Matter includes time that Locke Lord attorneys and paraprofessionals spent on matters related to filing the Hollywood Debtor's bankruptcy case and transitioning into chapter 11.   In particular, this Matter included preparing a notice of commencement of the chapter 11 case to be delivered to the Hollywood Debtor's senior secured creditors with respect to cancellation of a pending hearing on appointing a receiver for the Hollywood Debtor's property in foreclosure.  This Matter also includes advice and guidance given by Locke Lord to the Hollywood Debtor with respect to its responsibilities as a debtor in possession.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $480.00 | 0.30 | $139.50 |
| **Total** | | | | | **0.30** | **$139.50** |

---

[2]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit A.**

**B.    Adversary Proceedings (Matter 3)[3]**

(Fees: $279.00; Hours: 0.60)

61.    This Matter includes time spent by Locke Lord attorneys related to drafting a complaint to avoid 1st Equity Bank Northwest's lien on the Hollywood Debtor's property as a fraudulent conveyance.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 0.6 | $279.00 |
| **Total** | | | | | **0.6** | **$279.00** |

**C.    Automatic Stay (Matter 5)[4]**

(Fees: $1,488.00; Hours: 3.20)

62.    This Matter includes time spent by Locke Lord attorneys related to objecting to 1st Equity Bank Northwest's motion before this Court to authorize 1st Equity Bank Northwest to serve the Hollywood Debtor with a third-party citation related to the Hollywood Debtor's equity holders, Leon and Helen Petcov.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 3.2 | $1,488.00 |
| **Total** | | | | | **3.2** | **$1,488.00** |

---

[3]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit B**.

[4]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit C**.

D.     **Avoidance Action Issues (Matter 6)**[5]

(Fees: $2,371.50; Hours: 5.10)

63.     This Matter includes time spent by Locke Lord attorneys related to researching and addressing issues with respect to the Hollywood Debtor's complaint to avoid 1st Equity Bank Northwest's lien on the Hollywood Debtor's property as a fraudulent conveyance.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 5.1 | $2,371.50 |
| **Total** | | | | | **5.1** | **$2,371.50** |

E.     **Business Operations (Matter 7)**[6]

(Fees: $2,650.50; Hours: 5.70)

64.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to the business operations of the Debtor.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 5.70 | $2,650.50 |
| **Total** | | | | | **5.70** | **$2,650.50** |

F.     **Case Administration (Matter 8)**[7]

(Fees: $6,397.50; Hours: 15.00)

65.     This Matter includes the time that Locke Lord attorneys and paraprofessionals spent on attending to the general administration of this chapter 11 case during the Fee Period, including:

---

[5]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit D**.

[6]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit E**.

[7]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit F**.

- preparing the Hollywood Debtor for and attending the Hollywood Debtor's initial interview with the U.S. Trustee and advising the Hollywood Debtor with respect to its reporting requirements;

- preparing the Hollywood Debtor for and attending the section 341 meeting of creditors;

- coordinating with the U.S. Trustee regarding the payment of quarterly fees; and

- preparing motions with respect to and obtaining extensions of the Hollywood Debtor's exclusive period to file and solicit a plan of reorganization.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 12.70 | $5,905.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 3.50 | $1,050.00 |
| **Total** | | | | | **16.20** | **$6,955.50** |

### G.    Cash and Financing Issues (Matter 9)[8]

(Fees: $49,114.00; Hours: 110.00)

66.    This Matter incudes time spend by Locke Lord attorneys and paraprofessionals related to the Hollywood Debtor's liquidity needs, including the formulation of a cash collateral budget and negotiations with the Hollywood Debtor's secured creditors that have allowed the Hollywood Debtor to use cash collateral to operate its business.  After some initial disputes with certain of the Hollywood Debtor's secured creditors, the Hollywood Debtor was ultimately able to reach agreement on a series of interim orders and budgets that have allowed the Hollywood Debtor to operate its business while accruing a cash balance.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 96.60 | $44,919.00 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 9.90 | $2,970.00 |
| | | | | $350.00 | 3.50 | $1,225.00 |
| **Total** | | | | | **110.00** | **$49,114.00** |

---

[8]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit G**.

## H.     Claim Issues (Matter 10)[9]

(Fees: $3,124.50; Hours: 6.90)

67.     This Matter incudes time spend by Locke Lord attorneys and paraprofessionals related to the researching issues with respect to certain claims against the Hollywood Debtor's property.  In particular, the Locke Lord attorneys spent time researching grounds on which the Hollywood Debtor may challenge certain claims.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 17.30 | $8,044.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 0.30 | $90.00 |
| | | | | $350.00 | 0.50 | $175.00 |
| **Total** | | | | | **18.10** | **$8,309.50** |

## I.     Secured Creditor Issues (Matter 17)[10]

(Fees: $53,883.00; Hours: 108.20)

68.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to the Hollywood Debtor's various settlement discussions with its secured creditors, in particular, IBC and 1st Equity during the Fee Period to develop the settlements with each that are embodied in the Joint Plan.  The terms of these settlements are described in greater detail with respect to Matter 3 above.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $675.00 | 17.00 | $11,475.00 |
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 91.20 | $42,408.00 |
| **Total** | | | | | **108.20** | **$53,883.00** |

---

[9]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit H**.

[10]     A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit I**.

J.      **Plan, Disclosure Statement, and Exit Planning (Matter 18)**[11]

(Fees: $114,366.50; Hours: 247.90)

69.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to drafting and filing the Hollywood Debtor's Plan and Disclosure Statement, seeking confirmation of the Hollywood Debtor's Plan, and consummating the Plan. A detailed discussion of the work performed is set forth in the narrative discussion above.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $675.00 | 4.40 | $2,970.00 |
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 227.30 | $105,694.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 2.30 | $690.00 |
| | | | | $350.00 | 9.70 | $3,395.00 |
| | | | | $385.00 | 4.20 | $1,617.00 |
| **Total** | | | | | **247.90** | **$114,366.50** |

K.      **Hearings (Matter 19)**[12]

(Fees: $9,370.50; Hours: 19.70)

70.     This Matter includes time spent by Lock Lord attorneys attending hearings before the Court, where that time would not easily fall under a more specific Matter, such as case status hearings or hearings involving multiple Matters.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| David J. Fischer | Partner | 1977 | Restructuring | $675.00 | 1.00 | $675.00 |
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 18.70 | $8,695.50 |
| **Total** | | | | | **19.70** | **$9,370.50** |

---

[11]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit J**.

[12]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit K**.

L.     **Locke Lord Retention Issues (Matter 20)**[13]

(Fees: $18,367.50; Hours: 42.60)

71.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals related to preparing and obtaining approval of Locke Lord's retention application [Docket No. 23], preparing and obtaining approval for Locke Lord's First Interim Fee Application, preparing and filing the Supplemental Fischer Declaration, and ensuring compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Guidelines, including conducting searches of Locke Lord's database with respect to potential connections to parties in interest.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 30.70 | $14,275.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 2.30 | $690.00 |
| | | | | $350.00 | 8.40 | $2,940.00 |
| | | | | $385.00 | 1.20 | $462.00 |
| **Total** | | | | | **42.60** | **$18,367.50** |

M.     **Schedules, SoFAs, and Monthly Operating Reports (Matter 22)**[14]

(Fees: $23,298.50; Hours: 51.60)

72.     This Matter includes time spent by Locke Lord attorneys and paraprofessionals in assisting the Hollywood Debtor with the preparation and filing of its schedules of assets and liabilities and statement of financial affairs, and the preparation and filing of the Hollywood Debtor's monthly operating reports.

---

[13]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit L**.

[14]   A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit M**.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 45.90 | $21,343.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $300.00 | 0.80 | $240.00 |
| | | | | $350.00 | 4.90 | $1,715.00 |
| **Total** | | | | | **51.60** | **$23,298.50** |

**N.    Utility Issues (Matter 24)[15]**

(Fees: $744.00; Hours: 1.60)

73.    This Matter includes time spent by Locke Lord attorneys and paraprofessionals in assisting the Hollywood Debtor in negotiating with utility providers and setting adequate assurance deposits.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 1.60 | $744.00 |
| **Total** | | | | | **1.60** | **$744.00** |

**O.    Tax Issues (Matter 25)[16]**

(Fees: $1,005.50; Hours: 2.40)

74.    This Matter includes time spent by Locke Lord attorneys and paraprofessionals addressing various tax-related issues faced by the Hollywood Debtor and, in particular, assisting the Hollywood Debtor with determining the tax implications of certain restructuring strategies.

| Attorney | Position and Year Admitted | | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Steven L. Paul | Partner | 1973 | Tax | $775.00 | 0.20 | $155.00 |
| Phillip W. Nelson | Associate | 2004 | Restructuring | $465.00 | 0.70 | $325.50 |
| Michael B. Kind | Associate | 2011 | Restructuring | $350.00 | 1.50 | $525.00 |
| **Total** | | | | | **2.40** | **$1,005.50** |

---

[15]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit N**.

[16]    A detailed description of the services rendered and the expenses incurred by Locke Lord in its representation of the Hollywood Debtor with respect to this Matter during the Fee Period is attached hereto as **Exhibit O**.

**Reasonable and Necessary Services Rendered by Locke Lord**

75.     The foregoing professional services rendered by Locke Lord on the half of the Hollywood Debtor during the Fee Period were reasonable, necessary, and appropriate to the administration of this chapter 11 case and related matters.

76.     Locke Lord enjoys a national reputation for its legal expertise, and the attorneys of Locke Lord have represented debtors, creditors' committees, trustees, and creditors holding substantial claims in numerous chapter 11 cases, both in this district and around the country. Locke Lord brings to this chapter 11 case a particularly high level of skill and knowledge, which has inured to the benefit of the Hollywood Debtor and its stakeholders.

**Actual and Necessary Expenses Incurred by Locke Lord**

77.     As identified on **Exhibit P** hereto, Locke Lord has incurred a total of $2,522.26 in expenses on behalf of the Hollywood Debtor during the Fee Period.

78.     These charges are intended to reimburse Locke Lord's direct operating costs, which are not incorporated into the Locke Lord hourly billing rates.  Edwards Weldon charges external copying at the provider's cost, without markup.  Only clients who actually require such services are separately charged for such services.  Effectively including such expenses as part of the hourly billing rates would impose the cost point on clients who do not require extensive photocopying and other facilities and services.  Furthermore, Locke Lord has not charged the debtor for expenses related to legal research.

79.     Locke Lord has made every effort to minimize its disbursements in this chapter 11 case.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Hollywood Debtor in this chapter 11 case.

**Locke Lord's Requested Compensation and Reimbursement Should Be Allowed**

80.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."   Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement.

81.    In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

    a.    time spent on such services;

    b.    the rates charged for such services;

    c.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    d.    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    e.    whether the compensation is reasonable based on the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

82.    In the instant case, Locke Lord respectfully submits that the services for which it seeks compensation in this First Interim Fee Application were necessary for and beneficial to the Hollywood Debtor and its estate and were rendered to protect and preserve the Hollywood Debtor's estate.   Locke Lord respectfully submits that the services rendered to the Hollywood

Debtor were performed economically, effectively and efficiently and that the results obtained to date have benefited not only the Hollywood Debtor but all stakeholders in the Hollywood Debtor's chapter 11 case.  Locke Lord further submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Hollywood Debtor, its estate and all parties in interest.

83.      Locke Lord attorneys and paraprofessionals spent a total of 633.20 hours during the Fee Period, which services have a fair market value of $292,343.00.  As demonstrated by this Application and all of the exhibits submitted in support hereof, Locke Lord spent its time economically and without unnecessary duplication.   In addition, the work conducted was carefully assigned to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task.  In summary, the services rendered by Locke Lord were necessary and beneficial to the Hollywood Debtor and its estate, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty and nature of the issues involved.  Accordingly, Locke Lord respectfully submits that approval of the compensation and expense reimbursement sought herein is warranted.

## Notice

84.      As of the date hereof, the Hollywood Debtor has provided notice of this Application, in the manner set forth on the Certificate of Service attached hereto, to: (a) the Office of the United States Trustee; (b) counsel to the Hollywood Debtor's prepetition secured creditors; (c) all of the Hollywood Debtor's other known creditors; (d) the Internal Revenue Service; (e) the Illinois Department of Revenue; and (f) any entity that has filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested, the Hollywood Debtor respectfully submits that no further notice is necessary.

AM 57562888.1

### No Prior Request

85.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, Locke Lord respectfully requests that this Court enter an order substantially in the form of the Proposed Order: (a) allowing and awarding Locke Lord compensation for professional services rendered during the Fee Period on a final basis in the amount of $292,343.00 and for reimbursement of actual and necessary expenses incurred by Locke Lord during the Fee Period in the amount of $2,522.26; and (b) granting such other and further relief as the Court deems just.

Dated: October 16, 2017

                                                        **LOCKE LORD LLP**

                                                        By:   */s/Phillip W. Nelson*
                                                        _____
                                                               An Attorney of the Firm

David J. Fischer
Phillip W. Nelson
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
david.fischer@lockelord.com
phillip.nelson@lockelord.com
*Counsel to 1016 West Hollywood, LLC*